OPINION
{¶ 1} Appellant Mike Morris appeals his conviction, in the Guernsey County Court of Common Pleas, for two counts of attempted murder, each with a firearm specification. The following facts give rise to this appeal.
 {¶ 2} In June 2002, appellant's mother, Joyce Morris; sister, Myranda Morris; and his sister's two friends, Rebecca Lewers and Crystal McCalla, rented a cabin at Bucket Hill Campground located in Guernsey County. Appellant and Lawrence Caver visited the cabin. During the visit, appellant drank a 12-pack of beer purchased by Joyce Morris. Thereafter, appellant began fighting, with his mother, because she would not permit him to take her vehicle in order to purchase more beer.
 {¶ 3} Following the argument with his mother, appellant exited the cabin, drew a semi-automatic weapon and stated, "I'm going to kill all you bitches." Appellant then fired the weapon at Rebecca Lewers and Crystal McCalla while they were seated on the cabin's porch. Both girls sustained injuries. Rebecca suffered a gunshot wound to her abdomen which required immediate surgery. As a result of the shooting, Rebecca lost her left kidney. Crystal also suffered a gunshot wound to her abdomen. However, the wound did not penetrate the abdomen and therefore, did not damage any internal organs. Crystal further sustained an injury to her upper arm that shattered her elbow.
 {¶ 4} After firing the weapon, appellant left the scene and was apprehended several hours later. On June 27, 2002, the Guernsey County Grand Jury indicted appellant for four counts of attempted murder, each count contained a firearm specification. Counts one and two alleged the attempted murder of Rebecca Lewers and Crystal McCalla. Count three alleged the attempted murder of Myranda Morris. Count four alleged the attempted murder of Lawrence Caver.
 {¶ 5} Thereafter, defense counsel filed a motion for determination of competency and sanity of appellant. The trial court granted appellant's motion. Following the competency evaluation, the trial court concluded appellant was incapable of understanding the nature and objectives of the proceedings against him or assisting his defense counsel. Therefore, the trial court found appellant incompetent to stand trial, but that he may be able to be restored to competence with treatment. The trial court committed appellant to Twin Valley Behavioral Health Care for treatment.
 {¶ 6} On December 26, 2002, the trial court conducted another hearing on the issue of appellant's competency. Based upon a Competency Restoration Report, the trial court found appellant competent to stand trial. Appellant's trial commenced on September 16, 2003. Following presentation of the state's case, appellant moved for a judgment of acquittal on counts three and four of the indictment. The trial court granted appellant's motion as it pertained to count four.
 {¶ 7} On September 18, 2003, following deliberations, the jury returned a verdict finding appellant guilty of counts one and two of the indictment. The jury found appellant not guilty of count three. On October 1, 2003, the trial court sentenced appellant to a term of ten years incarceration for each count of attempted murder and a mandatory three-year prison term for each of the specifications. The trial court ordered all terms to be served consecutively for a total prison term of twenty-six years.
 {¶ 8} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 9} "I. The trial court erred and abused its discretion in sentencing the defendant to consecutive three year terms of actual incarceration on the two firearm specifications.
 {¶ 10} "II. The trial court erred and abused its discretion in sentencing the defendant to maximum terms and also consecutive maximum terms on the attempted murder convictions.
 {¶ 11} "III. The trial court erred and abused its discretion in failing and refusing to provide requested jury instructions for felonious assault and assault.
 {¶ 12} "IV. The decision of the trial court/jury is against the manifest weight of the evidence on the convictions of attempted murder."
 I {¶ 13} Appellant maintains, in his First Assignment of Error, the trial court abused its discretion when it sentenced him to consecutive three-year terms of actual incarceration on the two firearm specifications. We agree.
 {¶ 14} In reviewing sentencing issues, we do not apply an abuse of discretion standard of review. Instead, R.C.2953.08(G)(2) provides:
 {¶ 15} "* * * The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 16} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section2929.20 of the Revised Code, whichever, if any, is relevant:
 {¶ 17} "(b) That the sentence is otherwise contrary to law."
 {¶ 18} Appellant argues that under R.C. 2929.14(D)(1)(a) and (b), the trial court should have sentenced him to only one firearm penalty. This statute provides, in pertinent part:
 {¶ 19} "* * * [I]f an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification * * * [a] court shall not impose more than one prison term on an offender under [this section] for felonies committed as part of the same act or transaction."
 {¶ 20} In State v. Wills, 69 Ohio St.3d 690, 1994-Ohio-417, the Ohio Supreme Court interpreted language contained in R.C.2929.71(B), which was repealed in July 1996. This statute dealt with offenses involving firearms. The language interpreted by the Ohio Supreme Court is now contained in R.C. 2929.14. However, in addressing the language of the statute, the Court explained that:
 {¶ 21} "When it [the General Assembly] enacted R.C. 2929.71, the General Assembly intended to separately punish each criminal transaction committed with the assistance of firearms. Each separate criminal transaction performed with the assistance of a firearm is punishable by a mandatory three-year sentence. The language in R.C. 2929.71(B) instructs the courts on how to treat those cases where multiple offenses are committed with the assistance of a firearm by the same defendant. The statute states that separate mandatory sentences are appropriate unless the separate punishable criminal offenses were part of the same transaction or act." Id. at 691.
 {¶ 22} The Court further noted that it had never defined the word "transaction" as used in the statute. Therefore, the Court adopted a definition used by the Summit County Court of Appeals in State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720. Thus, the Court stated the word "transaction," as used in R.C.2929.71(B), means "`a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" Id.
 {¶ 23} The trial court relied upon the Wills case when it ordered the two gun specifications to be served consecutively. In doing so, the trial court stated it must determine the objective of the appellant. Tr. Sentencing Hrng., Oct. 1, 2003, at 27. The trial court explained that since it cannot look into the mind of another, it had to judge the appellant's conduct by what he said and did. Id. Specifically, the trial court noted:
 {¶ 24} "The statements attributed to this defendant at the time are that he was upset with his adopted mother for not permitting him to have the automobile to go get more beer and stated something to the effect have it your way, goes out on the porch and states something to the effect I'm going to kill or shoot you bitches. The Court notes that three young girls are in his presence. There's testimony there were three shots heard. The jury found proof beyond a reasonable doubt that two young girls were shot with an attempt to murder them. * * *
 {¶ 25} "* * * Crimes committed against different victims may be the basis for imposing consecutive firearm specifications. * * *
 {¶ 26} "* * * The objective of trying to kill two different people is if you point the gun and pull the trigger at one, point the gun and pull the trigger at the other your objective is to kill both of them. The Court finds under Ohio law and the direction given this Court by the courts of the State of Ohio that two consecutive gun specifications are appropriate based on the facts of this case." Id. at 27-30.
 {¶ 27} Appellant maintains the trial court was incorrect in reaching this conclusion because the injuries were the result of a single criminal adventure, although it resulted in injuries to two individuals. Thus, appellant concludes the firing of the weapon three times was a single transaction for purposes of R.C.2929.14(D). In support of this argument, appellant cites Statev. Bonner (Apr. 12, 1994), Franklin App. No. 93APA07-951. InBonner, the defendant got into an argument, at a craps game, pulled out a gun and shot the decedent three times and also shot another witness who worked for the decedent. Id. at 1. On appeal, the Tenth District Court of Appeals held:
 {¶ 28} "* * * [T]he crimes do constitute a single transaction. Although there are two separate acts involved, there being two victims, the acts constitute a single transaction. There is a logical relationship, a continuous time sequence, a common objective, and the crimes developed from a single criminal adventure. The crimes are bound together by time and space and are directed toward a single objective or purpose. Therefore, although involving separate acts, the crimes constitute a single transaction within the contemplation of R.C. 2929.71(B)." Id. at 5.
 {¶ 29} We agree with appellant's argument that the crimes are the result of a single transaction. Prior to firing the weapon at the victims, appellant stated, "I'm going to kill all you bitches." This statement indicates a single objective. After making the statement, appellant began firing a weapon rapidly in the direction of the victims. The shooting involved a continuous time sequence that developed from a single criminal adventure. As such, we conclude the trial court should not have imposed a consecutive sentence for the firearm specifications.
 {¶ 30} We distinguish the facts of the case sub judice from a previous decision rendered by this Court. In State v. Daniel
(June 10, 1996), Fairfield App. No. 95CA33, we held the trial court properly imposed a consecutive sentence for two firearm specifications for the following reasons:
 {¶ 31} "The record reflects appellant stated Abby Worrell was killed because Bobby Sheets was `tired of her.' * * * He further stated that he killed Jamie because `she was a witness and we didn't want no witnesses.' * * * We read this testimony as indicating that the acts of killing Abby Worrell and Jamie Kelley had different purposes and were not directed toward achieving a single objective, as required by the conjunctive definition of `transaction' set forth in Wills, * * *. Therefore, we find the trial court did not err in finding the aggravated murders of Abby Worrell and Jamie Kelley were not committed as part of the `same act or transaction.'" Id. at 4.
 {¶ 32} Clearly, unlike the defendant in the Daniel case, appellant did not express separate reasons for shooting the victims. Appellant merely expressed one intent and that was to kill everyone present. Appellant acted upon this intent in a single transaction.
 {¶ 33} Accordingly, we sustain appellant's First Assignment of Error.
 II {¶ 34} Appellant maintains, in his Second Assignment of Error, the trial court erred by imposing consecutive, maximum terms of imprisonment upon him. We disagree.
 {¶ 35} In support of this assignment of error, appellant first challenges the trial court's imposition of maximum sentences. Appellant contends the trial court should have sentenced him to the shortest possible prison term instead of the longest because he is a first-time felony offender.
 {¶ 36} In order to impose a maximum sentence, a trial court must comply with R.C. 2929.14(C) and R.C. 2929.19(B)(2)(d). Under R.C. 2929.14(C), a trial court may impose the maximum sentence pursuant to the following conditions:
 {¶ 37} "* * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 38} R.C. 2929.19(B)(2)(d) requires the trial court to provide its reasons for imposing a maximum sentence. Finally, inState v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, the Ohio Supreme Court held that when imposing maximum or consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. Id. at paragraphs one and two of the syllabus.
 {¶ 39} In the case sub judice, the trial court made the following statements concerning the imposition of maximum sentences:
 {¶ 40} "Here the shortest term is to be imposed if the offender has not previously served a prison term, which Mr. Morris has not, unless it demeans the seriousness of the offense and does not adequately protect the public. The Court makes that finding based on the facts of this case and the presentence investigation. The longest term is to be imposed only if the offender committed the worst form of the offense and the offender poses the greatest likelihood of committing future crimes. The Court makes both of these findings. Here without medical intervention the testimony and evidence in the record is that one and probably both of these little girls would have died. The Court, therefore, finds that the reasons for imposing the longest term are that this is the worst form of the offense of attempted murder, it would have been successful without prompt medical intervention and the offender poses the greatest likelihood of committing future crimes based on his criminal record." Tr. Sentencing Hrng., Oct. 1, 2003, at 33.
 {¶ 41} A review of the sentencing transcript establishes the trial court made the required findings to impose the maximum sentence. Specifically, the trial court found that appellant committed the worst form of the offense and poses the greatest likelihood of committing future crimes. In making these findings, the trial court relied upon testimony presented at trial that both girls likely would have died without medical intervention. The trial court also considered appellant's previous criminal history of violence. Accordingly, the trial court did not err when it imposed the maximum sentence on each count of attempted murder.
 {¶ 42} Appellant also argues, under this assignment of error, the trial court erred when it ordered the sentences to be served consecutively. In Comer, supra, the Ohio Supreme Court discussed consecutive sentences and stated:
 {¶ 43} "A court may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors. R.C.2929.14(E)(4). First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. * * * Second, the court must find
that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. * * * Third, the court must find
the existence of one of the enumerated circumstances in R.C.2929.14(E)(4)(a) through (c)." (Emphasis sic.) Comer at ¶ 13.
 {¶ 44} The factors contained in R.C. 2929.14(E)(4)(a) through (c) are as follows:
 {¶ 45} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 46} "(b) At least two of the multiple offense were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offense committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 47} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 48} In the case sub judice, at the sentencing hearing, the trial court made the following findings, on the record, after reviewing the statutory criteria:
 {¶ 49} "Applying those principles the Court finds that the impact on the victims was that the defendant on the night in question attempted to take their lives. The one little girl will live her life without a kidney. The other little girl had a badly damaged elbow. Both little girls will live with scars on their body. The scars in their mind cannot be discerned by the Court. They saw a person who because apparently he was denied further alcohol said have it your way, stepped on to a porch and the testimony is bang, bang, bang or boom, boom, boom. Two little girls fall to the bullets of an automatic handgun which the testimony is provided by his father figure who pleads that this Judge show leniency and mercy.
 "* * * {¶ 50} "* * * Is there an indication that the public needs protection from future crime by the offender in this case? The Judge is to judge fact not emotion. What are the facts? The facts have been read into the record from the presentence investigation. Domestic violence, trying to strike his mother or striking his mother in the head with a metal object; trying to kill his mother and his sister Myranda Morris, which by the way, was the third count of the indictment which was returned a verdict of not guilty by the jurors and Myranda Morris due to apparent acts of the adopted mother was not available to testify and had been sent to another state. Does that show a course of conduct for which the public needs protection? The Court finds it does from the facts of this case. If this defendant was returned early to the streets of Canton, Stark County, where his home is the people of Stark County and Canton, Ohio would be of threat to have their lives put at risk and jeopardy by a young man who has clear problems and is supplied a firearm and alcohol by his adopted family. Those are the facts that this court must fairly and impartially weigh and balance."
 "* * * {¶ 51} "Next, the Court finds that consecutive prison terms are necessary as the harm is so great or the seriousness of the offender's conduct and the offender's criminal history shows that consecutive terms are needed to protect the public. Tr. Sentencing Hrng., Oct. 1, 2003, at 30-34.
 {¶ 52} Based upon the above comments, the statutory requirements set forth in R.C. 2929.14(E)(4) and the Comer
decision, we conclude the trial court properly imposed consecutive sentences.
 {¶ 53} Appellant's Second Assignment of Error is overruled.
 III {¶ 54} In his Third Assignment of Error, appellant contends the trial court erred and abused its discretion when it denied his request to instruct the jury on felonious assault and assault. We disagree.
 {¶ 55} We review this assignment of error under an abuse of discretion standard of review as it is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require the requested instruction. In order to find an abuse of discretion, we must determine the trial court's decision is unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 56} Appellant sets forth two arguments in support of this assignment of error. First, appellant argues the facts of this case presents a "textbook case" of felonious assault. Felonious assault is defined in R.C. 2903.11(A) as follows:
 {¶ 57} "(A) No person shall knowingly do either of the following:
 {¶ 58} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 59} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 60} Upon review of the facts of this case, we conclude the trial court did not abuse its discretion when it denied appellant's request to instruct the jury on felonious assault or assault. The evidence presented at trial supports the trial court's decision to instruct the jury solely on attempted murder. R.C. 2923.02(A) defines "attempt" as follows:
 {¶ 61} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability of the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 62} The facts of this case clearly support the conclusion that appellant attempted to murder both Rebecca Lewers and Crystal McCalla. Immediately prior to the shooting, appellant stated, "I'm going to kill all you bitches." After making this statement, appellant began rapidly firing a semi-automatic weapon in the direction where the victims were seated. Testimony was presented at trial that if the victims had not received immediate medical attention, it was likely both would have died as a result of their injuries. Based upon appellant's statement and actions, it is clear appellant intended to cause more than just serious physical harm to the victims. Appellant intended to kill the victims. Thus, the trial court did not abuse its discretion when it refused to instruct the jury on felonious assault and assault.
 {¶ 63} Second, appellant argues the offenses of felonious assault and assault are lesser included offenses of attempted murder. The trial court rejected this argument citing the Ohio Supreme Court's decision in State v. Barnes, 94 Ohio St.3d 21,2002-Ohio-68. In the Barnes decision, the Court held that "* * * felonious assault under R.C. 2903.11(A)(2) is not a lesser included offense of attempted murder because it is possible to commit the greater offense without committing the lesser one." Id. at 26. This Court has reached the same conclusion in Statev. Williams, Licking App. No. 02-CA-82, 2003-Ohio-256 and Statev. Myers, Perry App. No. 01-CA-5, 2002-Ohio-253.
 {¶ 64} Appellant's Third Assignment of Error is overruled.
 IV {¶ 65} Appellant maintains, in his Fourth Assignment of Error, the jury's verdict is against the manifest weight of the evidence on the convictions for attempted murder. We disagree.
 {¶ 66} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 67} Appellant claims his convictions for attempted murder are against the manifest weight of the evidence because he was intoxicated and therefore could not act "purposely." R.C.2901.22(A) defines "purposely" as follows:
 {¶ 68} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 69} "Voluntary intoxication is not a defense, but where specific intent is a necessary element of the crime charged, the fact of intoxication may be shown to negate this element if the intoxication is such as to preclude the formation of such intent.State v. Fox (1981), 68 Ohio St.2d 53, 55, 22 O.O.3d 259, 260,428 N.E.2d 410, 411-412. Only where the defendant was "`so intoxicated as to be mentally unable to intend anything'" will his intoxication create a reasonable doubt as to his ability to form the specific intent essential to the charged felony. Statev. Jackson (1972), 32 Ohio St.2d 203, 206, 61 O.O.2d 433, 434,291 N.E.2d 432, 433, quoting Wertheimer, The Diminished Capacity Defense to Felony-Murder (1971), 23 Stanford L.Rev. 799, 805."State v. Otte, 74 Ohio St.3d 555, 564, 1996-Ohio-108.
 {¶ 70} Despite appellant's intoxication, we find the evidence was sufficient to permit a finding that appellant acted purposely when he shot the victims. As noted above, appellant clearly stated his intention to kill the victims and immediately began firing at them. Based upon this evidence, we do not find the jury clearly lost its way and created a manifest miscarriage of justice. Appellant's convictions for attempted murder are not against the manifest weight of the evidence.
 {¶ 71} Appellant's Fourth Assignment of Error is overruled.
 {¶ 72} For the foregoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Wise, J., Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs to be split equally between the parties.