[Cite as *State v. Babock*, 2012-Ohio-3627.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Sheila G. Farmer, J. |
| -vs- | |
| | Case No. 2011CA00286 |
| JOSHUA ALEXANDER BABCOCK | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2011CR0723

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      August 6, 2012

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant


JOHN D. FERRERO      RODNEY A. BACA
Prosecuting Attorney      Schnars, Baca & Infantino, LLC
Stark County, Ohio      610 Market Avenue North
     Canton, Ohio 44702
By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702

*Hoffman, J.*

{¶1} Defendant-appellant Joshua Alexander Babcock appeals his conviction and sentence entered by the Stark County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On May 11, 2011, the victim herein, Monique Crockett, did not report to work. Her employer tried to contact her via cell phone, and eventually spoke with Appellant, who indicated Crockett was in the hospital due to an accident. On May 12, 2011, Crockett again did not report to work. Her employer again tried to contact her via phone calls and text messages to her cell phone. Crockett's employer received a responsive text on May 13, 2011, indicating she was resigning her position.

{¶3} Crockett, a twenty-five year-old mother of three small children, recently had her children removed from her custody for leaving them unattended. Appellant and Crockett had been dating approximately seven months at the time of the incident.

{¶4} Members of Crockett's family learned she was missing, and heard rumors her body was in the trunk of a car driven by Appellant. Crockett's family began looking for her, and eventually located the car at the home of Pamela Walker on 14th Street N.E., Canton, Ohio. Several police officers responded to the home where the car was parked, and knocked on the door. Walker gave the police permission to search her home, and Appellant was found inside the home sitting on the couch. Upon noticing the police, Appellant ran into a back bedroom.

{¶5} The officers inquired of Appellant as to Crockett's whereabouts. Appellant indicated he did not know where she was, and she wouldn't answer his calls. The

police called Crockett's cell phone number, and a phone on the couch began to ring. The officers asked Appellant if he had the keys to the car, and Appellant indicated he did not, Monique had them. Walker then told the police she knew Appellant had the keys because she had witnessed him starting the vehicle.

{¶6} The officers read Appellant his Miranda rights, and asked him what they might find in the trunk of the car. Appellant responded, "you know what you'll find in the trunk of the car"; followed by an indication Crockett was in the car. Appellant admitted to the officers he and Crockett were driving around, got into an argument and she was having an asthma attack. He told the officers he pulled over into the Walker driveway, and went into the house because he was mad. When he returned, she was dead and he put her in the trunk of the car with clothes over her body. Appellant then told the officers where the key to the car was located, inside his tennis shoe.

{¶7} Officer Walker of the Canton Police Department opened the trunk of the car, which was stuffed with clothing and a sleeping bag. When he removed some of the items, he found Crockett's head.

{¶8} At the police station, the officers conducted a recorded, videotaped interview of Appellant, during which Appellant waived his Miranda rights. Appellant admitted he had been dating Crockett for seven months until they were evicted from their apartment, and then they were living in the car and in other people's homes.

{¶9} He told the officers Crockett got off work on Thursday, May 12, 2011, and they got into an "altercation," during which Crockett blamed him for losing her children. Appellant claimed she was having a panic attack and grabbed him, at which point he attempted to administer CPR. Appellant claimed despite his efforts, Crockett died.

{¶10} Appellant later admitted to putting Crockett in a sleeper hold, which he demonstrated to the detectives. Appellant told the officers,

{¶11} "I put my arm around her neck so her chin shit was right here and her throat was right here and I just squeezed but I ain't…I stopped cause she was like, Josh, can you please stop so we can talk about this.

{¶12} "***

{¶13} "Yeah. Then I stopped. As soon as I started talking this shit, this spit and shit come out her mouth I stopped and she like, and I rolled the window down so she can get her air back and we sat there and she was like, Josh, please don't do this, blah, blah, blah. We done been through too much. We done through a lot of bad shit together it's been straight, a bad road. Everything just fell apart. And then she said somethin' and she started talkin' about her mother fuckin' baby dad or whatever and then I just snapped. It just hit me again.

{¶14} "***

{¶15} "So I did it again. And this time I was all the way blacked out and I didn't stop."

{¶16} State's Exhibit 21, at 18-19.

{¶17} Appellant admitted to placing Crockett's body in the trunk after he killed her, claiming he was too afraid to call anyone.

{¶18} The Stark County Coroner later determined the cause of death was cervical compression.

{¶19} On November 18, 2011, the Stark County Grand Jury filed an amended indictment charging Appellant with one count of murder, in violation of R.C. 2903.02(A);

and one count of gross abuse of a corpse, in violation of R.C. 2927.01(B). Appellant entered a plea of not guilty to the charges, stipulated to his competency to stand trial and his sanity at the time of the offense. Appellant filed a motion to suppress the videotaped statement to the police, which the trial court denied. Appellant also filed a motion for appointment of an expert in the area of forensic medicine, asserting the autopsy report contains very specific medical information and is inconsistent. The trial court denied the motion via Judgment Entry of November 28, 2011.

{¶20} Following a jury trial, Appellant was convicted of the charges. Via Judgment Entry of December 29, 2011, the trial court entered the conviction and sentenced Appellant to fifteen years in prison on the murder count, twelve months on the gross abuse of a corpse count, to be served consecutively for a total of sixteen years to life.

{¶21} Appellant now appeals, assigning as error:

{¶22} "I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT THE RIGHT TO FUNDS FOR AN EXPERT WITNESS.

{¶23} "II. THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS WHEN IT FAILED TO PROVIDE JURY INSTRUCTIONS OF MANSLAUGHTER, INVOLUNTARY MANSLAUGHTER AND SELF-DEFENSE TO THE JURY.

{¶24} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR DURING JURY DELIBERATIONS.

{¶25} "IV. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

I.

**{¶26}** In the first assignment Appellant maintains the trial court erred in denying his motion for funds to retain an expert witness. The trial court denied the motion finding Appellant failed to demonstrate a particularized need.

**{¶27}** The State asserts there is no statutory authority to provide public funds for an indigent defendant's expert who is charged with murder. R.C. 2929.024 provides for experts in aggravated murder cases, and only when there is a demonstration the expert is reasonably necessary. The need must be legitimate and relevant to the case. *State v. Powell* 49 Ohio St.3d 255 (1990); *State v. Jenkins*, 15 Ohio St.3d 164.

**{¶28}** The authority to fund defense experts rests within the sound discretion of the trial court.

**{¶29}** The Ohio Supreme Court has held: "[p]ursuant to *Ake*, it is appropriate to consider three factors in determining whether the provision of an expert witness is required: 1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, 2) the burden on the government's interest if the service is provided, and 3) the probable value of the additional service and the risk of error in the proceedings if the assistance is not provided." *State v. Mason,* 82 Ohio St.3d 144, 149 (1998), citing *Ake v. Oklahoma*, 470 U.S. 68 (1985)

**{¶30}** This Court has held "[i]n the absence of a particularized showing of need, due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution does not require the provision of an expert witness." *In re B.L.,* 2009-Ohio-6341. A defendant must provide a trial court with facts to establish a particularized need for expert assistance

and must demonstrate more than a mere possibility of assistance to receive an expert witness at the state's expense. *State v. Nichols*, 2010-Ohio-2242. Undeveloped assertions the proposed assistance would be useful to the defense are patently inadequate. Id.

**{¶31}** On November 28, 2011, the trial court held a hearing on Appellant's motion for funds for an expert forensic scientist. Appellant requested funds to retain an expert in the area of forensic medicine to aid in the defense of Appellant, as counsel for Appellant had no training in the field of medicine and did not understand several terms in the coroner's report. In addition, Appellant's counsel stated she believed the report was inconsistent.

**{¶32}** The State claimed Appellant failed to demonstrate a particularized need for the expert.

**{¶33}** The trial court, via Judgment Entry of November 28, 2011, held:

**{¶34}** "In the present action the defendant has failed to show a particularized need as to how a forensic expert would assist him. Although counsel for the defendant has asserted that there are terms in the coroner's report that she doesn't understand, it is unclear what these terms are. Additionally, counsel for the defendant has asserted that there are inconsistencies in the medical report; however it is unclear what the inconsistencies are. Further, counsel for the defendant has not identified a specific forensic expert and has admittedly not spoken with Assistant Coroner Orlino or Dr. P.S.S. Murthy regarding their findings despite being given the opportunity to do so."

**{¶35}** We find the trial court did not abuse its discretion in denying the motion because as Appellant demonstrated no particularized need for such an expert.

Appellant made the request only 26 days prior to trial, and did not name the potential expert or explain what testimony could be anticipated. Counsel had not interviewed the coroner or the doctor performing the autopsy. Appellant's undeveloped assertions and generic statement regarding counsel's failure to understand all the terms in the autopsy report and unnamed inconsistencies were insufficient to establish the trial court abused its discretion.

{¶36} The first assignment of error is overruled.

II.

{¶37} In the second assignment of error, Appellant argues the trial court erred in not providing instructions on the lesser included offenses to the greater charge of murder.

{¶38} An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support *both* an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Robb* (2000), 88 Ohio St.3d 59, 74, 723 N.E.2d 1019 (emphasis added). Thus, if the jury can reasonably find the state failed to prove one element of the charged offense beyond a reasonable doubt but that the other elements of the lesser included offense were proven beyond a reasonable doubt, a charge on the lesser included offense is required. *Id.*

{¶39} Trial courts have broad discretion in determining whether the evidence adduced at trial was sufficient to warrant a jury instruction. *State v. Morris,* Guernsey App. No. 03CA29, 2004-Ohio-6988, reversed on other grounds, 109 Ohio St.3d 313, 847 N .E.2d 1174, 2006-Ohio-2109; *State v. Mitts* (1998), 81 Ohio St.3d 223, 228, 690 N.E.2d 522. "When reviewing a trial court's jury instructions, the proper standard of

review for an appellate court is whether the trial court's refusal to give a requested instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Sims,* Cuyahoga App. No. 85608, 2005-Ohio-5846, ¶ 12, citing *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. A trial court does not abuse its discretion by not giving a jury instruction if the evidence is insufficient to warrant the requested instruction. *State v. Lessin* (l993), 67 Ohio St.3d 487, 494, 620 N.E.2d 72. An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore,* supra.

**{¶40}** Appellant asserts the trial court abused its discretion in failing to instruct the jury on the lesser included offenses of involuntary manslaughter and reckless homicide. Appellant was convicted of murder, in violation of R.C. 2903.02(A), which reads:

**{¶41}** "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

**{¶42}** Involuntary manslaughter is defined at R.C. 2903.04:

**{¶43}** "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

**{¶44}** Reckless homicide is set forth at R.C. 2903.041:

**{¶45}** "(A) No person shall recklessly cause the death of another or the unlawful termination of another's pregnancy."

**{¶46}** Upon our review of the record, we find the trial court did not abuse its discretion by not giving a jury instruction on the lesser included offenses. Appellant

admitted to performing a sleeper hold on Crockett, releasing her, then, after she started complaining and mentioning her children's father, again performing the hold and cutting off her air supply until she died. The coroner testified at trial such a hold would result in death after three to four minutes. Appellant would have watched Crockett struggle and try to catch her breath, knowing the effect of cutting off her ability to breathe. The record clearly supports the jury's finding Appellant purposely intended to cause the death of Monique Crockett. We find the self-serving evidence Appellant relies upon insufficient to warrant the requested instructions.

{¶47} Appellant's second assignment of error is overruled.

III.

{¶48} In the third assignment of error, Appellant argues the trial court committed prejudicial error during jury deliberations.

{¶49} At trial, the jury indicated it had reached a verdict. The jury then returned a verdict of guilty. In polling the jurors individually, Juror No. 10 asked to speak with the Judge privately. When Juror No. 10 was asked if this was her individual and collective verdict, she answered it was her collective verdict, but was not her independent verdict. She also indicated members of the victim's family were staring her down. Earlier in the proceedings Juror No. 10 indicated she was uncertain whether her knowledge of the defendant would influence her decision despite her earlier indication during voir dire she could be fair and impartial.

{¶50} The trial court then instructed the jury as follows,

{¶51} "The Court: Juror No. 10, I'm going to ask you the question again and you just need to give me an answer.

**{¶52}** "With respect to the guilty verdict as it relates to the charge of murder, is that your individual verdict and the collective verdict of the jury?

**{¶53}** "Juror No. 10: To be honest, it is a collective verdict.  It is not my independent verdict.

**{¶54}** "The Court: Very well.  Ladies and Gentlemen, in that case there is no verdict.

**{¶55}** "And at this point in time I am required by law to read to you a specialized instruction.

**{¶56}** "In a large proportion of cases absolute certainty can not be attained or expected.

**{¶57}** "Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of others.

**{¶58}** "It is desirable that the case be decided.  You are selected in the same manner and from the same source as any future jury would be.

**{¶59}** "There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one.

**{¶60}** "Likewise, there is no reason to believe that more or clearer evidence will be produced by either side.

**{¶61}** "It is your duty to decide the case if you can do - - if you can conscientiously do so.  You should listen to one another's opinions with a disposition to be persuaded.

{¶62} "Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous.

{¶63} "If there is disagreement, all jurors should reexamine their position given that a unanimous verdict has not been reached.

{¶64} "Jurors for acquittal should consider whether their doubt is reasonable considering that it is not shared by others equally honest who have heard the same evidence with the same desire to arrive at the truth and under the same oath.

{¶65} "Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

{¶66} "At this time I'm going to return you to the jury deliberation room and ask you to further deliberate with respect to these matters.

{¶67} "Miss Hamilton, could you please return the jurors to the jury deliberation room."

{¶68} Tr. at 630-633.

{¶69} Appellant did not object to the instruction as given by the trial court.

{¶70} The trial court also conducted a colloquy on the record with regard to the interaction between Juror No. 10 and the victim's family, and concluded no inappropriate conduct had occurred.

{¶71} The jury returned to deliberations, and eventually reached a verdict of guilty on both charges to which Juror No. 10 indicated it was her individual verdict and the collective verdict of the jury. Tr. at 661. We find Appellant has not demonstrated actual prejudice as a result of the actions of Juror No. 10.

{¶72} The third assignment of error is overruled.

IV.

**{¶73}** In the fourth assignment of error, Appellant argues his conviction is against the manifest weight and sufficiency of the evidence. Specifically, Appellant argues he did not intend to cause the death of Monique Crockett.

**{¶74}** When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541, *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks,* supra.

**{¶75}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *Thompkins,* supra at 387, citing *State v. Martin,* 20 Ohio App .3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212, (1967), syllabus 1.

{¶76} R.C. 2901.22 defines purpose, as a "person acts purposely when it is his specific intention to cause a certain result" or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct. Persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts. *State v. Phillips*, 74 Ohio St.3d 72.

{¶77} The evidence demonstrates Appellant admitted to placing Crockett in a sleeper hold. He stated he released her, but upon her complaining and mentioning the father of her children, he placed her in the hold again, cutting off her airway, until she stopped breathing. The Stark County Coroner testified at trial the hold would not have resulted in death until after three to four minutes.

{¶78} Based upon the evidence presented in the record, we find Appellant's conviction for murder is supported by the manifest weight and sufficiency of the evidence, and the jury did not lose its way in convicting Appellant of the charges herein.

{¶79} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Farmer, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                     :
                                           :
-vs-                                       :            JUDGMENT ENTRY
                                           :
JOSHUA ALEXANDER BABCOCK                    :
                                           :
    Defendant-Appellant                    :            Case No. 2011CA00286


    For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.  Costs to Appellant.


                  s/ William B. Hoffman
                  HON. WILLIAM B. HOFFMAN


                  s/ Patricia A. Delaney
                  HON. PATRICIA A. DELANEY


                  s/ Sheila G. Farmer
                  HON. SHEILA G. FARMER